IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARY LINDERBORN, | * | |
| | * | |
| | * | |
| v. | * | Civil Action No. CCB-19-2532 |
| | * | |
| ARMADILLO VENTURES, LLC | * | |
| | ****** | |

## MEMORANDUM

Pending before the court in this negligence action, arising out of an alleged slip and fall at a Texas Roadhouse, is Armadillo Ventures, LLC ("Armadillo")'s motion for summary judgment (ECF 30) and its motion to strike the plaintiff's errata sheet (ECF 31). The motions have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, the court will deny both motions.

## BACKGROUND

The facts of this case are largely undisputed. On June 18, 2017, plaintiff Mary Linderborn and her husband, George Linderborn, visited the Texas Roadhouse located in Pasadena, Maryland and owned by defendant Armadillo. (ECF 30-2, M. Linderborn Dep. 19:2–4).[1] The restaurant was crowded, and the couple waited about ten minutes for a table. (*Id.* 20:3–19). While waiting to be seated, the Linderborns made their way toward the building's restrooms. (*Id.* 20:10–14). To use the restroom, patrons walk past the hostess' desk and through a bar area of the restaurant with hardwood flooring. (*Id.* 21:10–15, 23:3–8). Before the plaintiff reached the restroom, while still on the hardwood flooring, she fell. (*Id.* 21:1–6, 23:3–8). Mr. Linderborn had walked in front of the plaintiff, and while on the hardwood flooring, he felt his left foot slide. (ECF 30-3, G. Linderborn

---

[1] The court will refer to Mary Linderborn as "the plaintiff" or Mrs. Linderborn and to George Linderborn as "Mr. Linderborn" throughout this memorandum.

1

Dep. 9:1–4). Before he could tell his wife that he had slid on something, he heard the plaintiff's body slam to the ground. (*Id.* 9:5–12).[2] The plaintiff landed hard on her right hip, with her right foot twisted behind her. (ECF 30-2, M. Linderborn Dep. 25:19–26:12). She was not able to get up without her husband's assistance. (*Id.* 30:2–4).

After Mr. Linderborn picked up the plaintiff, the restaurant's manager, Dina Osborn, approached with a chair, and once the plaintiff was seated, Osborn asked the plaintiff a few questions and completed an accident report. (ECF 30-2, M. Linderborn Dep. 30:6–22). During their conversation, another customer asked to speak with Osborn, because her daughter had also just fallen, but the record contains no additional information regarding that incident. (ECF 30-2, M. Linderborn Dep. 30:20–31:6).

The Linderborns and Osborn continued to discuss the plaintiff's fall. The plaintiff and Mr. Linderborn both remember that it was a hot and humid day, and that Osborn told them the restaurant's air conditioner was having a difficult time keeping up with the humidity and the crowd in the restaurant, which affected the floor. (ECF 30-2, M. Linderborn Dep. 32:4–11; ECF 30-3 G. Linderborn, Dep. 11:10–19). Mr. Linderborn more specifically recalls Osborn describing how the humidity, combined with peanut oil left on the floor, made the floor slick and that Osborn said she did not have enough mats to lay down in the restaurant that day. (ECF 30-3 G. Linderborn Dep. 11:10–19, 16:9–20). Osborn disputes the substance of the conversation. She does not remember telling the plaintiff or Mr. Linderborn that the air conditioning system contributed to the floor being slippery and does not recall a time when the floor became slippery on a hot and crowded day. (ECF 30-4, D. Osborn Dep. 12:8–13:16). Nonetheless, Osborn moved a mat from near the bathroom to the area where the plaintiff fell "[t]o make them feel safer." (*Id.* 11:10–21).

---

[2] Mr. Linderborn did not see his wife fall.

2

Osborn confirmed that the restaurant regularly serves complimentary unshelled peanuts to patrons at tables and at the bar, and patrons are permitted to discard peanut shells on the floor of the restaurant. (*Id.* 19:12–16). Peanuts are served every day the restaurant is open, for the entire time it is open. (*Id.* 22:5–18). The restaurant is "known for having peanuts on the floor." (*Id.* 19:15–16). The restaurant's floors are swept every night after the restaurant closes, and scrubbed weekly, usually on Monday or Tuesday. (*Id.* 24:4–8). June 18, 2017, the date on which the plaintiff fell, was a Sunday. Osborn testified that the floor is noticeably less clean on the days just before it is scrubbed, but she does not know whether the peanuts leave oil on the floor or whether the oil causes the floor to be slippery. (*Id.* 33:13–34:2).

After the Linderborns returned to their home that evening, the plaintiff discovered oily stains on the right side of her clothing, including on her jeans and her white silk blouse, and small pieces of the inner skins of peanut shells stuck to her jeans, leading her to believe she fell in peanut oil. (ECF 30-2, M. Linderborn Dep. 23:11–18, 24:19–21). Armadillo disputes the presence of peanut oil and peanut fragments where the plaintiff fell. While the peanut shells are found underneath the bar and tables, the walkway between them is a "major walkway" according to Osborn and in her view far enough away from both the bar and the tables that it is normally free of peanut debris. (ECF 30-4, D. Osborn Dep. 20:6–13). Osborn did not see the plaintiff fall. She inspected the floor after the fall to see if there was anything on the ground and did not see anything. (*Id.* 10:20–11:5). She did not walk on the area where the plaintiff fell or otherwise test whether the area was slippery. (*Id.* 35:7–13). Osborn reported that she knew of one additional customer who fell in a different part of the restaurant after losing his footing. (*Id.* 18:3–19).

The plaintiff does not recall looking at the floor either before or after she fell and did not know at that time what caused her to fall. (ECF 30-2, M. Linderborn Dep. 36:16–22). Mr.

Linderborn does not remember inspecting the floor either; he was more concerned with his wife's condition at the time. (ECF 30-3, G. Linderborn Dep. 20:14–21:2). Neither Mrs. Linderborn nor her husband had any difficulty walking in any other areas of the restaurant. (ECF 30-3, G. Linderborn Dep. 18:13–17). Mrs. Linderborn was wearing boots with a two-and-a-half-inch stacked heel on the day of the accident. (ECF 30-2, M. Linderborn Dep. 28:18–19).

The plaintiff sought medical treatment following the fall for injuries to her ankle, knee, and shoulder, including a tear in the meniscus of her right knee that required surgery to repair and an additional surgery on her shoulder. (ECF 30-2, M. Linderborn Dep. 45:3–46:22, 50:8–14). She continues to experience near-daily pain in her knee and shoulder and some discomfort in her ankle as a result of the fall. (*Id.* 46:13–51:2).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations

omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## DISCUSSION

### I. Motion to Strike the Plaintiff's Errata Sheet

Armadillo moves to strike changes the plaintiff made to her deposition testimony in her errata sheet regarding her answers to questions about her knowledge of the cause of her fall. (ECF 31). The following colloquies are at issue:

> Q   Because your husband helped you get up and moved you a little bit, were you ever able to actually look at the floor where you fell either before or after your fall?
> A·  No, I don't recall.
> Q·  Do you know what you slipped on?
> A·  No.

(ECF 31-2, M. Linderborn Dep. 36:16–22). The plaintiff's errata sheet changes her answer to "Do you know what you slipped on?" from "No" to "peanut oil and condensation" because she "misunderstood the time frame of the question." (ECF 31-3, Errata Sheet).

> Q   The complaint filed initially says, "Plaintiff slipped and fell due to slippery condition on the floor. Floor had peanuts, peanut shells, peanut oil on it." Does that sound familiar?
> A·  I don't know where peanuts or peanut shells is coming from.

(ECF 31-2, M. Linderborn Dep. 38:3–9). The errata sheet changes this answer to "Yes" claiming that the plaintiff "misunderstood." (ECF 31-3).

Armadillo claims these changes should be stricken because they directly contradict the plaintiff's original testimony and other portions of the plaintiff's deposition in which she states that she did not inspect the floor on which she fell and that she came to believe she slipped due to

5

a buildup of peanut oil and/or condensation after discovering oily stains on her clothing. The plaintiff responds that her substantive changes are permitted under Federal Rule of Civil Procedure 30(e).

Under Rule 30(e) a deponent is permitted to review their deposition transcript and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." The Fourth Circuit has not opined on the permissible scope of alterations under the rule, and while "[a] majority of courts interpret Rule 30(e) literally to allow any timely, substantive change for which a reason is given[,]" this court has followed a "growing minority [that] recognizes limitations to the scope of permissible changes to deposition testimony[.]" *Harden v. Wicomico Cnty.*, 263 F.R.D. 304, 307–08 (D. Md. 2009); *see also Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 296–97 (D. Md. 2008); *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 267–68 (3d Cir. 2010); *Brittney Gobble Photography, LLC v. Sinclair Broadcast Grp., Inc.*, No. SAG-18-3403, 2020 WL 761174, at *4 (D. Md. Feb. 14, 2020). This district has distinguished between substantive changes that "correct misstatements or clarify existing answers" and those that "materially change the answers or fully supplant them," permitting the former and barring the latter. *Green v. Wing Enters., Inc.*, No. 1:14-CV-01913-RDB, 2015 WL 506194, at *2 (D. Md. Feb. 5, 2015) (citing *Wyeth*, 252 F.R.D. at 297). The adequacy of the reason given for the change and the prejudice of striking the correction are also relevant in determining whether to strike a deponent's proposed changes. *Id.* The court is more likely to strike the proposed change if the reason provided is conclusory. *See id.*

The court finds that neither of the disputed changes materially alter or contradict the plaintiff's testimony. The plaintiff's proposed change to her answer to the question "Do you know what you slipped on?" does nothing more than to clarify that she believes she knows the cause of

her fall. Our caselaw limiting the scope of substantive changes to depositions is primarily concerned with deponents who answer at their deposition to the best of their knowledge and later seek to provide contradictory or more detailed or favorable answers, treating the deposition as a "take-home examination." *See, e.g.*, *Brittney Gobble*, 2020 WL 761174, at *6 (citing *Wyeth*, 252 F.R.D. at 296–97; *Harden*, 263 F.R.D. at 307–08). Here, reading the plaintiff's testimony as a whole, it is clear her proposed change is not a post-hoc attempt to materially alter her testimony to suit her preference. The plaintiff consistently testified that she did not inspect the area on which she fell, (ECF 31-2, M. Linderborn Dep. 36:16–22), and did not know what caused her fall immediately following the accident, (*id.* 23:9–10), but that she later inferred the cause of her fall from the state of her clothes and Osborn's statements after her fall, (*id.* 24:12–21, 38:11–22). The plaintiff's rationale that she "misunderstood the time frame of the question" demonstrates that the plaintiff originally answered the more narrow question whether she knew at the time of the fall what she slipped on, but that is not a complete answer to the question whether the plaintiff ever obtained knowledge about the cause of her fall. The proposed change clarifies the plaintiff's testimony to acknowledge that she believes from later discovered evidence that the cause of her fall was peanut oil and condensation.[3]

To the extent that the plaintiff's testimony includes some contradictory language regarding whether Osborn ever mentioned a problem with condensation to the plaintiff, (*see id.* 39:11–15 ("**Q** . . .[W]hen Deana comes and sits down with you at your table, does she use the word

---

[3] The court also notes that at least one of the plaintiff's changes, uncontested here, does not favor her claim but is consistent with other testimony. At page 29, line 22, the plaintiff originally answered "Yes" to the question, "Did you look at the floor?," but her errata sheet changes her answer to "No," consistent with the answer she gave to a similar question later in her deposition. (*See* ECF 31-3, Errata Sheet; ECF 31-2, M. Linderborn Dep. 36:16–22). This further supports the court's conclusion that the plaintiff is not attempting to materially alter her testimony.

condensation? **A** No, she used the word affected.")), this does not change the plaintiff's belief that condensation may have in part caused her fall or the persuasiveness of her reasons for changing her testimony. *See EBC*, 618 F.3d at 270 ("[N]othing . . . requires courts to strike contradictory errata if sufficiently persuasive reasons are given, if the proposed amendments truly reflect the deponent's original testimony, or if other circumstances satisfy the court that amendment should be permitted.").

Similarly, the second proposed change merely clarifies the plaintiff's answer. The plaintiff's original answer that she is not familiar with or does not recognize her allegation in the complaint that she slipped on peanut shells or oil on the floor cannot be squared with the remainder of her testimony. For example, immediately following this original answer, the plaintiff clarifies that "when I went home with the oil that was on my clothes and the debris is the only way that I knew that it was some kind of oil, peanut oil." (ECF 31-2, M. Linderborn Dep. 38:3–9). Accordingly, the court will deny Armadillo's motion to strike.

**II.     Motion for Summary Judgment**

To succeed on a claim of negligence in Maryland, "the plaintiff must prove: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 560 (D. Md. 2014) (internal quotation marks and citations omitted). The duty of an owner or occupier of real property to protect a person entering that property from injury "varies according to the visitor's status as an invitee (i.e., a business invitee), a licensee by invitation (i.e., a social guest), a bare licensee, or a trespasser." *Id.* at 561. Armadillo does not contest for the purpose of summary judgment Mrs. Linderborn was a business invitee; the restaurant was required to use

reasonable care to "protect the invitee from injury caused by an unreasonable risk that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care." *Id.* (internal quotation marks omitted) (citing cases). "[T]he burden is upon the customer to show that the proprietor created the dangerous condition *or* had actual or constructive knowledge of its existence[.]" *Maans v. Giant of Maryland, L.L.C.*, 871 A.2d 627, 631 (Md. Ct. Spec. App. 2005) (emphasis added) (internal quotation marks and citations omitted). Armadillo moves for summary judgment on the basis that the plaintiff has presented insufficient evidence of a dangerous condition that caused her injuries and of Armadillo's knowledge of any such condition.

### A. Causation

Armadillo argues first that the plaintiff has not produced legally sufficient evidence to show the existence of a dangerous condition because the plaintiff did not directly observe any of the conditions she alleges – peanuts, peanut shells, peanut oil, or condensation, and the plaintiff speculates about the cause of her injury. It is not necessary, however, for the plaintiff to proffer direct evidence of the existence of a dangerous condition or to eliminate alternative causes of her injury in order to defeat a motion for summary judgment. For example, in *Myers v. TGI Friday's, Inc.*, No. CIV. JFM 07-333, 2007 WL 4097498 (D. Md. Nov. 9, 2007)[4], a case on which Armadillo relies, the plaintiff's only support for a dangerous condition was her testimony that the floor "felt slippery." *Id.* at *6. As in this case, the plaintiff in *Myers* did not see any substance on the floor before or after she fell and no other witness saw anything on the floor. *Id.* Though the court observed that the plaintiff "could just as well have slipped on the floor because of the heeled shoes

---

[4] Unpublished opinions are cited for the persuasiveness of their reasoning and not for any precedential value.

she was wearing or from the effects of the almost three alcoholic drinks she had consumed," the court did not, contrary to Armadillo's assertions, hold that the plaintiff's evidence of a dangerous condition was too speculative to permit the issue to go to a jury. Rather, the court concluded that, viewing the facts in the light most favorable to the plaintiff, it would assume that the dangerous condition existed as the plaintiff alleged, but granted summary judgment on other grounds, namely that the plaintiff could not show the defendant caused or had actual or constructive knowledge of the condition. *Id.* at *6–7. Armadillo similarly misreads *Ronk v. Corner Kick, Inc.*, 850 F. Supp. 369 (D. Md. 1994). The court in *Ronk* granted summary judgment to the defendant in the absence of evidence that the defendant had knowledge of or created, by failing to maintain its HVAC system, a pool of water that the plaintiff alleged had accumulated on the defendant's racquetball court. *Id.* at 370–71. The court did not address the sufficiency of the plaintiff's evidence that a dangerous condition existed.

Judge Hollander's opinion in *Rybas* is also instructive. In that case, the plaintiff sustained injuries after falling on an outdoor, portable dance floor. 21 F. Supp. 3d at 550. She alleged that her fall was caused by wet and muddy conditions on the dance floor due to rain earlier in the day about which the defendants were or should have been aware. *Id.* at 550–51. A single witness testified that he observed mud, rain, and grass near, but not at, the spot where the plaintiff fell, and the plaintiff and her husband both observed that the floor was slippery close to where she had fallen. *Id.* at 565–66. The plaintiff was not sure what caused her fall. *Id.* After reviewing cases in which plaintiffs similarly provided only circumstantial evidence that an injury was caused by a dangerous condition and in which alternative explanations were at least as likely, *id.* at 562–65, Judge Hollander concluded that though the plaintiff's evidence that a wet and slippery condition existed and caused her fall was "far from overwhelming" and "a reasonable jury may well

conclude" that her fall was instead caused by her "'vigorous' dancing in heeled shoes," sufficient evidence of causation existed to defeat summary judgment. *Id.* at 565–66.

The plaintiff's evidence of a dangerous condition in this case is neither stronger nor weaker than in *Myers* or *Rybas*. While no witness saw any moisture, peanuts, peanut shells, or oil on the floor where the plaintiff fell, the plaintiff has presented other evidence that those conditions were present. Patrons routinely throw peanut shells on the floor near the walkway where the plaintiff fell, (ECF 30-4, D. Osborn Dep. 19:12–16), Mr. Linderborn felt his foot slide just a few steps ahead of where his wife fell, (ECF 30-3, G. Linderborn Dep. 9:1–4), and the plaintiff discovered an oily substance and peanut shell fragments on her clothing following her fall, (ECF 30-2, M. Linderborn Dep. 23:11–18, 24:19–21). The restaurant's floor is scrubbed once a week and would have been noticeably less clean on a Sunday, as the cleaning day was Monday or Tuesday. (ECF 30-4, D. Osborn Dep. 33:13–34:2). Finally, the Linderborns' account of their conversation with Osborn provides some evidence that peanut oil was present. (ECF 30-2, M. Linderborn Dep. 32:4–11; ECF 30-3, G. Linderborn Dep. 11:10–19).

Armadillo makes the point that each of these facts can easily support a finding that the cause of the plaintiff's fall simply cannot be determined. For example, that the plaintiff discovered oil on her clothing shows only that she fell *into* oil and not that she slipped *on* oil, and the plaintiff could have just as easily tripped over her own two-and-a-half inch heels. (ECF 40, Reply, at 2). These explanations are not unreasonable. But viewing the evidence as a whole and in the light most favorable to the plaintiff, a rational trier of fact could just as reasonably infer that the plaintiff slipped, as she alleges, on a dangerous condition involving peanut fragments and peanut oil. "[I]t is the province of the fact-finder to resolve [such] genuine disputes as to causation." *Rybas*, 21 F. Supp. 3d at 566; *see also Maans*, 871 A.2d at 632–33 (plaintiff presented sufficient evidence that

she slipped on water as opposed to an alternative cause where defendant's employee stated "clean up all that water" after the plaintiff fell, though no witness inspected the floor before or after the fall, plaintiff did not feel water, and plaintiff did not sense that her clothes were wet); *Uhler v. Outback Steakhouse of Fla., LLC*, No. CV DKC 17-3462, 2018 WL 6523970, at *4 (D. Md. Dec. 12, 2018) (single eyewitness' testimony that a napkin was beside the plaintiff's foot after she fell sufficient evidence of a dangerous condition); *Frostbutter v. Bob Evans Farms, Inc.*, No. CIV.A. CBD-12-2388, 2013 WL 4026985, at *5 (D. Md. Aug. 6, 2013) (factual dispute regarding whether a curtain over which the plaintiff was alleged to have tripped touched a floor or not resolved in light most favorable to the plaintiff and precluded summary judgment for the defendant as to the existence of an unreasonably dangerous condition).

### B. Creation or Knowledge of the Dangerous Condition

As noted above, the plaintiff must prove either that Armadillo created the dangerous condition alleged to be the cause of the plaintiff's fall or that it had actual knowledge of the condition. Armadillo submits that plaintiff has offered no evidence of advance knowledge or notice of a dangerous condition. In doing so, Armadillo focuses on the plaintiff's evidence that Osborn told the Linderborns that the air conditioner was underperforming and caused the floor to be slick.[5] The court agrees with the defendant that Osborn's post hoc rationalization of the cause of the plaintiff's fall is not evidence that Armadillo was aware of any hazard posed by the combination of the humid condition in the restaurant and peanut oil. Even so, it is not clear that the plaintiff is

---

[5] Armadillo also argues that evidence of other falls at the restaurant are not evidence of knowledge of a dangerous condition. There is almost nothing in the record concerning the circumstances surrounding the other fall that allegedly took place on the day of the plaintiff's accident or of the other fall that Osborn described. Without such evidence, those incidents hold little if any probative value. *See, e.g.*, *Smith v. Hercules Co.*, 204 Md. 379, 385 (Md. 1954) ("Evidence of other accidents, particularly where the circumstances are not identical, have little probative value and are calculated to prejudice the jury.").

claiming that the alleged peanut oil only posed a danger to the plaintiff when combined with condensation. That was Osborn's theory—but the plaintiff proceeds here on the theory that peanut oil alone could have caused her fall. (*See* ECF 39-1, Opp'n at 18). It is undisputed that Armadillo was aware of that condition and moreover, there is sufficient evidence that the defendant created it. "Under Maryland law, when there is enough evidence to show that the Defendant created the dangerous condition, knowledge does not appear to be required." *Uhler*, 2018 WL 6523970, at *5 n.7 (citing *Rybas*, 21 F. Supp. 3d at 562–67); *see also Konka v. Wal-Mart Stores, Inc*, 133 F.3d 915(Table), 1998 WL 24378, *4 (4th Cir. 1998). Armadillo does not dispute that the Texas Roadhouse location permits its customers to shell peanuts onto the floor of the restaurant and is "known for having peanuts on the floor." (ECF 30-4, D. Osborn Dep. 19:15–16). It also admittedly leaves any residue or oil the peanuts might leave on the floor of the restaurant to accumulate over the course of a week, before scrubbing the floors on a Monday or Tuesday. (*Id.* 24:4–8). This case is thus distinguishable from the cases cited by Armadillo in which "the presence of a foreign substance on a floor is explainable by causes beyond a proprietor's control as well as within it[.]" *Ronk*, 850 F. Supp. at 371; *see also Lexington Mkt. Auth. v. Zappala*, 233 Md. 444, 446 (1964) (no liability for an oil or grease spot in a parking garage where there was no evidence the condition was caused by the garage or its employees or when the spill occurred); *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 233 (1965) (no liability for green bean on the floor of store where the bean may have fallen from a grocery cart moments before the plaintiff fell). The dangerous condition the plaintiff alleges would not have been present but for the defendant's intentional acts.

## CONCLUSION

For the foregoing reasons, the court will deny Armadillo's motion for summary judgment and Armadillo's motion to strike the plaintiff's errata sheet. A separate order follows.

2/1/2021
Date

/S/
Catherine C. Blake
U.S. District Court Judge